**Kevin James PORTER,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 71A03–8609–CR–283.

Court of Appeals of Indiana,
Third District.

Jan. 28, 1987.

Paul James Newman, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Kevin Porter was found guilty of burglary, a Class B felony.

The burglary was discovered in progress but the perpetrator fled. Porter was apprehended about 45 minutes later and was found to have in his possession several items taken in the burglary. It was also determined that his fingerprints matched latent fingerprints found inside the window ledge and upon a video recorder in the burglarized home.

At trial Porter objected to introduction of the fingerprint exhibits and the expert testimony concerning them upon the basis that the fingerprint exemplars were the product of an unlawful search and seizure.

He raises these same objections on appeal together with the assertion that in the absence of the fingerprint evidence there was insufficient evidence to sustain his conviction. He relies upon the Fourth Amendment and upon Article I, Section II of the Constitution of the State of Indiana.

The burglary in question occurred June 5, 1985. The facts surrounding the taking of the exemplar used as an exhibit are as follows. On December 13, 1985 Porter was under arrest and was incarcerated in the St. Joseph County jail. The legality of Porter's detention in December is not challenged although it is not altogether clear what offense he was being held for at that time.[1] On that date the prosecuting attorney applied to the court for an order to secure an examplar; a copy of that petition was apparently delivered to the sheriff's office; Porter was told that the court had ordered him to be fingerprinted; and he was, in fact, fingerprinted. (It is reason-ably inferable that the deputy mistakenly believed the petition was a court order, but that inference is not compelled by the evidence.)

On December 16, 1985 the court did order that Porter be fingerprinted and his fingerprints were again taken. It is undisputed, however, that the exemplar taken on the 13th was the one submitted to the Federal Bureau of Investigation and the one used at trial.

Porter contends that because he was erroneously told he had been ordered by the court to submit to fingerprinting, the fingerprints taken on the 13th constituted an illegal seizure and the evidence should have been suppressed at trial under the exclusionary rule. He relies upon *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 and *Davis v. Mississippi* (1969), 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676. We assume that the representations made to Porter vitiate any supposed consent to the fingerprinting.

The state responds by arguing that, absent an unlawful detention, taking the fingerprints was not an intrusion protected against by either the Fourth Amendment or Article I, Section II. In the alternative it argues that under *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377, *cert. denied*, (1985) 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 the exclusionary rule need not be applied since the evidence necessarily would have been (and was?) inevitably discovered by legitimate means.

While there is merit to the state's argument under *Nix*, we choose not to rely upon *Nix* as our ground for decision.

It will be recalled that *Schmerber* was concerned with taking a blood sample for alcohol analysis over the accused's objec-

---

1. Counsel for appellant in indexing the transcript has committed an error which occurs all too frequently and should be brought to the general attention of the reader. Indiana Rules of Procedure, Appellate Rule 7.1(C) requires the table of contents to deal specifically with the evidence introduced at trial referring to the transcript pages where they occur. The rule is not satisfied by a mere reference to where the court reporter's index to the bill of exceptions appears. More significantly, the reporter's index is of little value since the pagination there is different than that of the compiled transcript. If complied with, the rules of appellate procedure can be of substantial aid to counsel in effectively presenting asserted errors for review.

tion while he was being treated at a hospital following an automobile accident. Noting the extraction was made in a simple, medically acceptable manner in a hospital environment, the court rejected Schmerber's claim of general due process violation. It also rejected the claim of Fifth Amendment violation noting that such things as fingerprinting had never been found to be within the communications or testimonial nature of this protection.

In holding the Fourth Amendment applied but exigent circumstances existed, the Court stressed that taking the blood sample involved an intrusion into the human body and that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." 384 U.S. 767, 86 S.Ct. at 1834. *See also McClain v. State* (1980), 274 Ind. 250, 410 N.E.2d 1297.

In *Davis v. Mississippi* the Court had before it a fingerprinting case. The issue was not the taking of Davis' fingerprints but the illegal detention of Davis during which the taking occurred. Reversing the conviction the Court explained that detentions for the sole purpose of taking fingerprints are no less subject to the constraints of the Fourth Amendment for probable cause than other forcible detentions by police officers.

The Court made the limitation of its *Davis* holding clear in *United States v. Dionisio* (1973), 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 where it upheld the taking of voice exemplars from twenty witnesses subpoenaed to appear before a grand jury.

"[I]n *Davis* it was the initial seizure— the lawless dragnet detention—that violated the Fourth and Fourteenth Amendments, not the taking of the fingerprints.

\*　　\*　　\*　　\*　　\*　　\*

*Davis* is plainly inapposite to a case where the initial restraint does not itself infringe the Fourth Amendment."

410 U.S. at 11, 93 S.Ct. at 770.

In addition to a number of decisions which at least impliedly recognize finger-

printing as neither invading the right against self incrimination or an unwarranted intrusion (*see, e.g., Schmerber, supra; McClain, supra*) we note that Indiana has two statutes addressing the subject.

IC 5–2–7–1, enacted by the General Assembly in 1986 (and not directly applicable here) provides for filing with the court a fingerprint sample of each person arrested for a felony or Class A misdemeanor.

The statute now appearing as IC 10–1–1–20 has for more than forty years directed the state police to take fingerprint identifications from persons arrested for felonies and authorized them to do so for persons arrested on other offenses. A prior version of this statute was determined in *State ex rel. Mavity v. Tyndall* (1947), 225 Ind. 360, 74 N.E.2d 914, *appeal dismissed* 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118 as authorizing municipal police departments to do the same thing.

While these statutes are not determinative of the constitutional question, they are nevertheless revealing of the public attitude towards the minimal nature of the invasion involved in fingerprinting. It involves none of the probing into an individual's private life or thoughts that marks an interrogation or search. *Davis*, 394 U.S. at 727, 89 S.Ct. at 1397.

We conclude that by requiring a person properly under arrest to submit to fingerprinting procedures, the state did not engage in a seizure within the proscription of the Fourth Amendment or of Article I, Section II of the Constitution of the State of Indiana.

It follows that the evidence was properly admitted and that the conviction was sustained by the evidence.

Affirmed.

HOFFMAN and STATON, JJ., concur.