**Michael Anthony SIMMS,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 20A05–0207–CR–310.

Court of Appeals of Indiana.

July 9, 2003.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Michael Simms (Simms), appeals his conviction for stalking, a Class B felony, Ind.Code § 35–45–10–5.

Affirmed.

### ISSUES

Simms raises three issues on appeal, which we restate as follows:

1. Whether the evidence was sufficient to support Simms' conviction for stalking, a Class B felony;

2. Whether Simms' conviction for stalking, a Class B felony, and the 180–day sentence he served for violating a protective order constitute double jeopardy; and

3. Whether the trial court properly sentenced Simms.[1]

### FACTS AND PROCEDURAL HISTORY

Simms married Heather Simms (Heather) in 1997. The couple have two children, who were six and two at the time of trial. By March of 2001, Heather decided she wanted a divorce, due to Simms' violent outbursts towards Heather and the children. At that time, Heather informed Simms of her decision.

Subsequently, Heather began receiving threatening phone calls from Simms that frightened her. On March 29, 2001, Heather filed for divorce and obtained a temporary protective order against Simms. When Simms received the divorce papers, he became very angry and stated, "it wasn't happening" and that he was going to kill Heather. (Transcript p. 684).

On April 3, 2001, Heather returned home from work to find approximately forty-five messages from Simms on her telephone answering machine. In several of the messages, Simms threatened Heather and frightened her. For example, Heather testified that she was particularly frightened by the message in which Simms stated he was going to take Heather's severed head and set it on the front desk at the police station. In response to the messages, Heather immediately took her

---

1. On July 19, 2002, our supreme court amended Appellate Rule 7(B) effective January 1, 2003. The rule is directed to the reviewing court and is made as of the date the decision or opinion is handed down. Accordingly, although the sentence here was imposed prior to January 1, 2003, our review takes place as of this date and the "inappropriate" test is therefore applied.

children to stay at her mother's house. From there, Heather took a tape recording of the threatening messages to the police station and then went to stay with a friend. Heather remained away from her home and left her children with her mother for the next several weeks.

In late April of 2001, Heather wanted to return to her normal life and decided to go back to her home. On Heather's second night back, Simms appeared at the house. As Simms approached the house, Heather's dog ran towards him and Simms punched the dog in the head. Heather told Simms to leave and started back into the house. Simms pushed his way into the house, began hitting Heather in the face and head, and broke her glasses. Simms stopped hitting Heather and left the house when an unidentified female, who was outside of the house, told Simms, "Come on, we gotta go." (Tr. pp. 485–86).

Simms continued to leave threatening messages on Heather's telephone answering machine until June of 2001, when she obtained a new, unlisted phone number. Heather did not see Simms during the summer of 2001, with the exception of seeing him driving past her house on two different occasions sometime in August. Heather and her children continued to stay with a friend during this time.

On October 2, 2001, Heather drove to her mother's house to pick up some clothing for her children. As Heather was leaving, she saw Simms walking toward her. Heather told him to leave her alone and turned to get into her truck. Simms pulled a gun out of his pocket, pointed it toward Heather, and fired a shot just as Heather opened the door to get into her truck. Heather heard four or five other shots and the sound of the bullets hitting the truck as she was inside. Simms fled on foot. Heather pursued Simms in her truck and Simms fired three additional shots at her, two of which hit her truck.

Simms was charged with attempted murder and stalking, a Class B felony. From May 6, 2002, to May 11, 2002, the matter was tried to a jury. Although the jury was unable to reach a verdict on the charge of attempted murder, they returned a verdict of guilty on the charge of stalking, a Class B felony. On June 6, 2002, Simms received the maximum sentence of ten years with an additional ten years for aggravating circumstances, for a total of twenty years to be served in the Department of Correction.

Simms now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

■ Simms contends that the State did not present sufficient evidence to support his conviction for stalking while armed with a deadly weapon, a Class B felony. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier-of-fact. *Cox*, 774 N.E.2d at 1028–29.

Indiana Code § 35–45–10–5 states, in pertinent part:

(a) A person who stalks another person commits stalking, a Class D felony.

. . . .

(c) The offense is a Class B felony if:

(1) the act or acts were committed while the person was armed with a deadly weapon.

With regard to I.C. § 35–45–10–5, "stalk," "harassment," and "impermissible contact" are statutorily defined as follows:

As used in this chapter, "stalk" means a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened. The term does not include statutorily or constitutionally protected activity.

I.C. § 35–45–10–1.

As used in this chapter, "harassment" means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include statutorily or constitutionally protected activity, such as lawful picketing pursuant to labor disputes or lawful employer-related activities pursuant to labor disputes.

I.C. § 35–45–10–2.

As used in this chapter, "impermissible contact" includes but is not limited to knowingly or intentionally following or pursuing the victim.

I.C. § 35–45–10–3.

Thus, in order to convict Simms of stalking, as a Class B felony, the State was required to prove to the jury beyond a reasonable doubt that Simms: (1) knowingly or intentionally; (2) while armed with a deadly weapon; (3) engaged in a course of conduct involving repeated or continuing harassment of Heather; (4)

that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened; and (5) that actually caused Heather to feel terrorized, frightened, intimidated, or threatened. *See* I.C. §§ 35–45–10–1 through –3 and 35–45–10–5.

Simms first argues that the State failed to prove that Heather was actually terrorized by Simms' conduct. Therefore, the State's failure to prove this essential element of stalking, as a Class B felony, requires reversal of his conviction. We disagree.

■ At trial, the State presented evidence that Simms left a multitude of vulgar and, often, violent messages on Heather's telephone answering machine subsequent to Heather filing for divorce. Over the course of several months, Heather collected nearly seven hours of messages on cassette tapes. Heather testified as to the content of some of the threatening messages and the fear she felt upon hearing them. For instance, when the State asked Heather which message scared her the most, she described one in which Simms told her he was going to take her severed head to the police station and set it on the front desk.

Further, Heather testified that she felt threatened, intimidated and harassed. Heather's actions in response to Simms' threats confirm her testimony. The record reveals that, when she filed for divorce in late March of 2001, Heather obtained a temporary protective order in an effort to stop Simms' harassing telephone calls and with the hope that he would leave her alone. The order was converted to a permanent protective order by the divorce court in late April of 2001. Simms threatened to take Heather's life on several occasions in telephone answering machine messages and in front of family members. Heather testified that, as a result, she took her children to stay at her mother's house

because, if something was going to happen to her, she did not want her kids to witness it. While her children stayed with her mother, Heather stayed with a friend for several weeks. She testified that she saw her children every day, but only briefly, because she feared that Simms was watching her—as he told her in the messages. Heather did not want Simms to know that she or the children were at her mother's.

The record further indicates that Heather bought a different car and obtained an unlisted phone number. Given this testimony, it was reasonable for the jury to infer that Heather felt terrorized, frightened, intimidated and threatened. Therefore, we find that the State carried its burden of proving this essential element of stalking, as a Class B felony. *See* I.C. §§ 35–45–10–1 and –5.

Next, Simms challenges the sufficiency of the evidence in his conviction for stalking, as a Class B felony, by asserting an absence of harassing conduct. Specifically, Simms contends that the messages he left on the answering machine in Heather's house subsequent to April 3, 2001, should not qualify as harassment because Heather moved out of her house on April 3; therefore, she was not there to hear them. Simms' argument is wholly without merit.

■ First, we find this argument waived due to Simms' failure to cite authority and to make a cogent argument on appeal as required by App. R. 46(A)(8)(a). Simms merely makes the baseless assertion that messages left on an answering machine in an unoccupied house "should not be considered as harassment, regardless of content." (Appellant's Br. p. 11).

Moreover, the record reveals that the reason Heather was not present in her house to receive Simms' threatening messages was precisely *because* of Simms' threatening messages. Thus, harassment,

as defined in I.C. § 35–45–10–2, existed prior to Heather's leaving her home in an effort to hide from Simms. Further, even if the post-April 3, 2001 messages left by Simms on Heather's answering machine are disregarded, the evidence demonstrates several other examples of Simms' repeated and continuing harassment of Heather sufficient to support his conviction. Therefore, Simms' argument on this issue fails. Accordingly, we conclude that the State presented sufficient evidence to support Simms' conviction for stalking, a Class B felony.

## II. *Double Jeopardy*

Next, Simms contends that his conviction for stalking, a Class B felony, and the 180–day jail sentence he served for violating a protective order constitute double jeopardy. Specifically, Simms maintains that, at trial, the State used the September 1, 2001 incident that triggered the protective order violation as a predicate offense to prove an essential element of stalking, a Class B felony. We disagree.

■ Two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999). Thus, the double jeopardy "same offense" analysis under the Indiana constitution consists of both the statutory elements test and the actual evidence test. *Id.* at 49–50.

■ Under the statutory elements test, each offense must contain at least one element that is separate and distinct from the other offense so that the same evidence is not necessary to convict for both

offenses. *Id.* at 52. In the case at hand, the two offenses are contempt of court for violation of a protective order and stalking, a Class B felony.

■ With regard to indirect contempt of court, it was necessary for the trial court to find that Simms was guilty of any willful disobedience of the protective order issued: (1) by the court; (2) under the authority of the law or the direction of the court; and (3) after the protective order was served upon Simms. *See* I.C. 34–47–3–1.

As stated above, in order to convict Simms of stalking, a Class B felony, the State was required to prove to the jury beyond a reasonable doubt that Simms: (1) knowingly or intentionally; (2) while armed with a deadly weapon; (3) engaged in a course of conduct involving repeated or continuing harassment of Heather; (4) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened; and (5) that actually caused Heather to feel terrorized, frightened, intimidated, or threatened. *See* I.C. §§ 35–45–10–1 to –3 and 35–45–10–5.

Clearly, each offense contains more than one essential element separate and distinct from the essential elements of the other offense. Therefore, under the statutory elements test, there is no double jeopardy violation.[2] *See Richardson,* 717 N.E.2d at 52.

■ With regard to the actual evidence test, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53.

To show that the challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the first offense may also have been used to establish the essential elements of the second challenged offense. *Id.* Simms fails in this regard as well.

Specifically, Simms' incarceration for contempt of court with regard to violating the protective order was based on an incident that occurred on September 1, 2001. The record reflects that, on that day, Simms encountered Heather's mother, stepfather, and the Simms children at a local park. Simms was in possession of a large hunting knife in a sheath. Simms told Heather's stepfather that, if he did not allow him to see his kids, he would "gut" him "right here and right now." (Tr. pp. 759–60, 777–78). Heather was not present during this incident.

On the contrary, the incident that ultimately led to Simms being charged with stalking, a Class B felony, was the October 2, 2001 incident in which Simms approached Heather on the street and fired his gun at her. In order to prove the essential elements of stalking, the State presented evidence of Simms stalking Heather, beginning when she filed for divorce and including the forty-five threatening messages left on Heather's answering machine on April 3, 2001. The State presented evidence that Simms stalked Heather throughout the spring, late summer and early fall of 2001. Therefore, it

---

2. Simms vaguely raises a Fifth Amendment double-jeopardy claim, but fails to provide cogent argument. For this reason, we find Simms' Federal double-jeopardy issue waived pursuant to Appellate Rule 46(A)(8)(a). Waiver notwithstanding, the Federal double-jeopardy analysis, known as the *Blockberger* test,

is consistent with the Indiana "statutory elements" analysis set forth in *Richardson,* 717 N.E.2d at 52. Thus, because we find no violation of the Indiana statutory elements test, we may reasonably conclude that there is likewise no Fifth Amendment double-jeopardy violation.

was necessary for the State to present very different testimony with regard to the stalking charge than that used to show that Simms was in violation of the protective order.

Further, with regard to the State carrying its burden of proving the essential elements of stalking, a Class B felony, the September 1, 2001 incident was irrelevant to the State's case-in-chief; therefore, the State presented no evidence regarding the September 1 incident during its case-in-chief. In fact, the State only elicited testimony of the September 1 incident from rebuttal witnesses in order to impeach Simms, who testified during his direct examination that he had no conscious contact with Heather's parents during the summer and early fall of 2001.

Because evidence of the September 1, 2001 incident was not essential to the State's case-in-chief, nor was it presented as such, there is no double jeopardy under the actual evidence test.

### III. *Inappropriate Sentence*

#### A. Standard of Review

Simms asserts that the twenty-year prison sentence imposed by the trial court was manifestly unreasonable. However, as noted above, we now review sentences under the "inappropriate" standard articulated in App. R. 7(B). The standard set forth in Rule 7(B) is premised on the concept that, although Article VII, Section 6 of the Indiana constitution authorizes this court to review and revise sentences, we will not do so unless the sentence imposed is "inappropriate in light of the nature of the offense and the character of the offender." *See* App. R. 7(B); *Prowell v. State*, 787 N.E.2d 997, 1004 (Ind.Ct.App. 2003).

#### B. Mitigating Circumstances

Simms contends that the trial court's enhancement of his sentence was improper. Specifically, Simms asserts that the trial court did not give enough weight to three mitigating factors, namely: (1) Simms' criminal history contains no felony convictions; (2) Simms' criminal history is not violent; and (3) Simms sustained a head injury "that may have well been a primary contributor to his anger-management problems and diagnosis of explosive disorder." (Appellant's Br. p. 18).

First, we note that the trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Powell v. State*, 751 N.E.2d 311, 317 (Ind. Ct.App.2001). Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked. *Kien v. State*, 782 N.E.2d 398, 415 (Ind.Ct. App.2003).

In its sentencing statement, the trial court addressed Simms' criminal history. However, despite the lack of felony convictions, the trial court viewed Simms' criminal history as an aggravating factor, as follows: "The aggravating circumstances consist of the following: [f]our misdemeanor convictions that preceded this case. All of which indicate your unwillingness to abide by the laws of this state." (Tr. p. 869).

The trial court did not specifically address Simms' assertion that his prior criminal history was non-violent. However, as stated above, the trial court is not required to accept as mitigating the circumstances proffered by the defendant. *Powell*, 751 N.E.2d at 317. Thus, the trial court's decision to consider Simms' misdemeanor convictions as an aggravating factor is not an abuse of discretion.

Finally, in its sentencing statement, the trial court found the history of a head injury, the fact that Simms did not

take his medication, and the fact that Simms was receiving therapy for explosive disorder as mitigating factors. Nevertheless, Simms contends that, "the suggestion is quite strong that an organic condition was influencing [his] behavior" and "constitutes a *significant* mitigator." (Appellant's Br. p. 18) (emphasis added). However, it is the sole discretion of the trial court to determine which aggravating and mitigating circumstances to consider, and to determine the weight accorded each of these factors. *Perry v. State,* 751 N.E.2d 306, 309 (Ind.Ct.App.2001). Therefore, we find no abuse of discretion with regard to the trial court's decision not to accord greater weight to this mitigating factor.

### C. Provocation

■ Next, Simms argues that the trial court failed to consider provocation when balancing the aggravating and mitigating factors. Specifically, Simms contends that Heather admittedly "knew how to make [Simms] angry" and "seemed to undertake some actions with no purpose other than to stir up trouble." (Appellant's Br. p. 18). However, Simms did not raise provocation as a mitigating factor to the trial court. If the defendant fails to advance a mitigating circumstance at sentencing, this court will presume that the circumstance is not significant and the defendant is precluded from advancing it as a mitigating circumstance for the first time on appeal. *Spears v. State,* 735 N.E.2d 1161, 1167 (Ind.2000). Consequently, Simms is precluded from raising provocation as a mitigating factor on appeal.

### D. Inappropriate Sentence

■ When reviewing whether a defendant was properly sentenced, we consider whether the sentence is appropriate in light of the nature of the offense and the character of the offender. *See* App. R.

7(B); *See also Rodriguez v. State,* 785 N.E.2d 1169, 1174 (Ind.Ct.App.2003). In considering the appropriateness of the sentence for the crime committed, trial courts should initially focus upon the presumptive sentence. *Hildebrandt v. State,* 770 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied.* Trial courts may then consider deviating from the presumptive sentence based upon a balancing of the factors, which must be considered pursuant to I.C. § 35–38–1–7.1(a) along with any discretionary aggravating and mitigating factors found to exist. *Id.* When a trial court imposes an enhanced sentence, it must identify all of the significant aggravating and mitigating factors, state the specific reason why each factor is considered aggravating or mitigating, and articulate its evaluation and balancing of those factors. *Brown v. State,* 760 N.E.2d 243, 245 (Ind. Ct.App.2002), *trans. denied.*

Here, the jury convicted Simms of stalking, a Class B felony. The presumptive sentence for a Class B felony is ten years, with not more than ten years added for aggravating circumstances or not more than four years subtracted for mitigating circumstances. *See* I.C. § 35–50–2–5. The trial court sentenced Simms to the maximum sentence of twenty years—the ten-year presumptive with ten years added for aggravating circumstances. In support of its sentence, the trial court found several aggravating factors, some of which are summarized from the trial court's sentencing order as follows:

1. Simms' criminal history, which indicates his unwillingness to abide by the laws of the State.

2. Simms' numerous pending harassment cases also indicating Simms' unwillingness to abide by rules of law and court orders.

3. Simms violated a restraining order and made 40 to 50 phone calls including

threats to place the severed head of the victim on the desk at the police station and other threats to kill the victim.[3]

4. Simms chose to use a handgun, and fired it multiple times creating a danger of injury to bystanders in the residential area.[4]

5. Simms has violent tendencies and is in need of rehabilitation that can only be provided in a penal facility.

6. Simms injured the pet dog when he hit it.

(Appellant's App. pp. 93–5).

As discussed above, the trial court found three mitigating circumstances. In balancing the mitigating circumstances with the aggravating circumstances, the trial court found that, "the aggravating circumstances in this case [ ] outweigh the mitigating circumstances substantially." (Tr. p. 872). Accordingly, the trial court enhanced Simms' sentence to the maximum of twenty years in the Department of Correction.

Simms contends that maximum sentences should be reserved for the worst offenders with the worst records, and that he does not qualify as a "worst offender." Therefore, Simms maintains that his sentence should be reduced to the presumptive sentence of ten years. However, after reviewing the record along with the sentencing statement and the aggravating and mitigating circumstances, we conclude that the trial court did not abuse its discretion in determining that the aggravating fac-

tors substantially outweigh the mitigating factors. *Brown v. State,* 760 N.E.2d 243, 247 (Ind.Ct.App.2002). Additionally, we do not find the sentence imposed inappropriate in light of the nature of the offense and the character of the offender. *See* App. R. 7(B); *Rodriguez,* 785 N.E.2d at 1174.

## CONCLUSION

Based on the foregoing, we conclude that the evidence was sufficient to support Simms' conviction for stalking, a Class B felony. Further, we find that Simms' incarceration for contempt of court with regard to violating a protective order and his conviction for stalking, a Class B felony, do not constitute double jeopardy. Lastly, we conclude that Simms' enhanced sentence is appropriate in light of the nature of the offense and the character of the offender.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.

---

3. The 40 to 50 threatening messages Simms left on Heather's answering machine were essential to the State's burden of proving stalking, as a Class B felony, and therefore cannot be used as an aggravating factor. However, the heinous nature of Simms' threat to place Heather's severed head on the front desk of the police station goes to the nature of the offense and is thus a proper aggravating factor. *See* I.C. § 35–38–1–7.1(a)(2); *Veal v. State,* 784 N.E.2d 490, 494 (Ind.2003).

4. Although the Simms' handgun was an essential element of stalking, as a Class B felony, the fact that he discharged it in a residential area whereby innocent bystanders could have been injured or killed is a valid aggravating circumstance and goes to the nature of the offense. *See* I.C. § 35–38–1–7.1(a)(2).