## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 19 2015, 9:28 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Lizbeth W. Pease
Nichols & Wallsmith
Knox, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gregory Schweisthal,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 19, 2015

Court of Appeals Case No.
75A04-1403-CR-141

Appeal from the Starke Circuit Court.
The Honorable Kim Hall, Judge.
Cause No. 75C01-1308-FB-21

**Baker, Judge.**

[1] Gregory Schweisthal appeals his convictions and sentence for class D felony Invasion of Privacy[1] and class A misdemeanor Domestic Battery.[2] He argues that there was insufficient evidence to support his conviction for invasion of privacy, that the admittance of State's Exhibit 30 violated Indiana Rule of Evidence 404(b), that the admission of Dr. Gregory Hale's testimony was improper, and that his sixty-four-month sentence is inappropriate. Finding no error, we affirm.

## Facts

[2] Schweisthal and J.S. were married in 2006. On October 3, 2012, the trial court issued a no contact order, barring Schweisthal from having any contact with J.S. The no contact order precluded Schweisthal from contacting J.S., both in person and through text, calls, or social media. It also prohibited third parties from contacting J.S. on Schweisthal's behalf. J.S. and Schweisthal disregarded the no contact order and continued to have contact, both in-person and via text. They also took a vacation together.

[3] On August 10, 2013, the no contact order was still in effect. Schweisthal texted J.S. and asked her if she wanted to go to the races with him. J.S. told Schweisthal that she would rather attend a party thrown by a co-worker; she invited Schweisthal to accompany her. He agreed, and he picked J.S. up for the

[1] Ind. Code § 35-46-1-15.1

[2] I.C. § 35-42-2-1.3(a)(2).

party at approximately 5:00 p.m. The two stopped at a liquor store on the way to the party. Schweisthal and J.S. then socialized at the party.

[4] After leaving the party, the two began to argue while they were in the car. At trial, J.S. testified that Schweisthal called her a "whore" and a "slut." Tr. p. 47. They eventually arrived at a local bar. J.S. testified that Schweisthal was still angry with her at the bar, and continued to yell at her.

[5] When the two left the bar, Schweisthal demanded that J.S. give him her cell phone. J.S. asked Schweisthal to take her home. Instead of driving her home, however, Schweisthal drove J.S. to his mother's house. He then took her phone, which she was holding in her hand. When J.S. got out of the car, Schweisthal pushed her to the ground in the yard. The two fought on the ground, and J.S. kicked Schweisthal; she screamed at him to leave her alone and take her home. At that point, Schweisthal's brother came out of the house and told him to take J.S. home because she was "nothing but trouble." *Id.* at 59.

[6] Schweisthal and J.S. then went to his bedroom. J.S. testified that Schweisthal placed his arm on her neck and pushed. J.S. testified that Schweisthal had sexual intercourse with her throughout the night. The two then slept. When they woke up in the morning, J.S. could not locate her shorts, and she testified that Schweisthal would not return them to her and that he told her that she was a "whore" and could walk home naked. *Id.* at 70. J.S. found a pair of men's shorts and began to walk home barefoot. She still did not have her cell phone.

[7] Schweisthal drove up next to J.S. and told her to get in his car. Schweisthal drove back to his mother's house, where he retrieved J.S.'s clothes and purse. He then drove to a Cracker Barrel, where J.S. changed into jeans. Then they went to a McDonald's, and Schweisthal bought coffee. Schweisthal then drove J.S. to her home.

[8] When they arrived at J.S.'s home, Schweisthal went into a bedroom and slept. J.S. sat down on the couch in her living room and cried. When Schweisthal woke up, he asked J.S. if she would like to go see a movie, and J.S. said that she did not want to. Schweisthal asked J.S. to come into the bedroom, where he put his head in her lap and told her he was sorry. The next day, Schweisthal texted J.S., telling her that she was probably pregnant. He told her that he had never meant to hurt her and that he was sorry.

[9] J.S. told her daughter what had occurred, and her daughter encouraged her to call the police, but J.S. did not. Eventually, J.S. spoke to a friend from the Starke County Prosecutor's Office, who told her that she needed to report what had happened. J.S. then spoke to officers with the Starke County Sheriff's Department.

[10] On August 16, 2013, the State charged Schweisthal with Count I, rape, a class B felony; Count II, invasion of privacy, a class D felony; Count III, invasion of privacy, a class D felony; Count IV, strangulation, a class D felony; and Count V domestic battery, a class A misdemeanor. On March 13, 2014, the State, by way of an amended information, changed Counts II and III to class A

misdemeanor invasion of privacy. The State also added Count IIA and IIIA, enhancements to the invasion of privacy charges based on Schweisthal's prior criminal history, which would elevate those charges to class D felonies.

[11] Schweisthal's three-day jury trial began on January 22, 2014. At trial, the State introduced the text messages sent by Schweisthal from June 2013 through August 10 and 11, 2013 into evidence. Schweisthal did not object. The State also introduced the testimony of expert witness Dr. Gregory Hale, who testified regarding the cycle of domestic violence and the reasons why domestic violence victims may not leave their abusers. Schweisthal objected to the testimony as "highly prejudicial." Tr. p. 144.

[12] On January 24, a jury found Schweisthal guilty of Counts II, III, and IV. The jury found Schweisthal not guilty of rape and strangulation. Schweisthal pleaded guilty to enhancements IIA and IIIA, and the trial court merged Counts II and IIA and Counts III and IIIA.

[13] Regarding sentencing, Schweisthal entered into a plea agreement in another cause, number 75C01-1209-FD-198 (FD-198), in which he pleaded guilty to three counts of class D felony domestic battery. That agreement stipulated that the sentences for those three counts of domestic battery would be served concurrently.

[14] On February 28, 2014, the trial court held a sentencing hearing in the instant case. It identified the following as aggravating factors: 1) the harm, injury, or loss suffered by the victim was greater than the elements necessary to prove the

commission of the offense, 2) Schweisthal's criminal history, and 3) the fact that Schweisthal had recently violated the terms of pretrial release and violated a no contact order. It identified as mitigating factors the fact that J.S. had taken part in inducing or facilitating the offense by inviting Schweisthal to violate the no contact order and the fact that Schweisthal pleaded guilty to Count IIA and IIIA and to all the counts of domestic battery in FD-198. Finding that the aggravating factors outweighed the mitigating factors, the trial court merged the invasion of privacy counts and sentenced Schweisthal to thirty-two months executed for the invasion of privacy conviction and to one year executed for the domestic battery conviction, to be served concurrently. The sentence in the instant case was ordered to be served consecutively to the sentence imposed in FD-198, for a total sentence of sixty-four months. Schweisthal now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

Schweisthal argues that there was insufficient evidence to convict him of invasion of privacy. When reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010). Rather, we consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom, and we will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

[16] In order to prove that Schweisthal was guilty of invasion of privacy, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally violated "a no contact order issued as a condition of pretrial release, including release on bail or personal recognizance, or pretrial diversion, and including a no contact order issued under IC 35-33-8-3.6." I.C. § 35-46-1-15.1(5).

[17] Schweisthal does not argue that there was not a no contact order. Rather, he asserts that the State failed to prove that he knowingly and intentionally violated the order. He argues that the no contact order was not entered into evidence and that, therefore, the jury cannot know if the no contact order included a warning informing Schweisthal that he could not communicate with J.S. even if she initiated the contact. He maintains that because he and J.S. were in regular contact and even took vacations together, J.S.'s actions indicated that the no contact order was no longer valid.

[18] Schweisthal, however, ignores the fact that he stipulated to his knowledge of the no contact order. At trial, he stipulated that, "[o]n October 3, 2012, Judge Kim Hall issued a no contact order to the defendant Gregory Schweisthal barring him from having any contact with [J.S.]." Tr. p. 208. Furthermore, Schweisthal was reminded of the no contact order in open court on July 19, 2013, less than a month before the events in the instant case occurred. *Id.* at 259-60. Therefore, a reasonable jury could have concluded that Schweisthal had knowledge of the no contact order.

Furthermore, Schweisthal's implication that J.S. could somehow nullify the no contact order by initiating contact with him is incorrect. Our legislature has made clear, in Indiana Code section 34-26-5-11, that "[i]f a respondent is excluded from the residence of a petitioner or ordered to stay away from a petitioner, an invitation by the petitioner to do so does not waive or nullify an order for protection." Therefore, the fact that J.S. contacted Schweisthal does not in any way change the fact that the no contact order was in full force on August 10 and 11, 2013. There was sufficient evidence to support Schweisthal's conviction for invasion of privacy.

## II. Admissibility of Evidence: Exhibit 30

Schweisthal next argues that the trial court erred in admitting State's Exhibit 30, which consisted of text messages sent between Schweisthal and J.S. The admission of evidence at trial is a matter left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review these determinations for abuse of that discretion, and will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260.

Here, while Schweisthal argues that this evidence is prejudicial, he did not object to the admission of the evidence at trial. The failure to make a contemporaneous objection at trial results in the waiver of the issue on appeal. *Stephens v. State*, 735 N.E.2d 278, 282 (Ind. Ct. App. 2000). As Schweisthal did not object at trial and does not argue that admission of the evidence constituted

fundamental error, this argument is waived. Waiver notwithstanding, we address the merits of Schweisthal's argument.

[22] Schweisthal contends that the evidence contained in Exhibit 30 was admitted in violation of Indiana Evidence Rule 404(b). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Schweisthal argues that, while the State may have properly introduced evidence of text messages sent on or about August 10 and 11, 2013, it was an abuse of discretion for the trial court to admit text messages sent beginning in June 2013, two full months before the incident in the instant case. Such evidence, he argues, was evidence of prior bad acts in violating the no contact order that fall into none of the permitted uses provided for in Rule 404(b).

[23] We agree with Schweisthal that the text messages sent in June were inadmissible, and were erroneously admitted into evidence in violation of rule 404(b), but we find the error to be harmless. *See Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) ("Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party."). Our Supreme Court has stated that the improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.* Here, there was abundant independent evidence that Schweisthal had contacted J.S., in person and via

text.  Therefore, we do not find that the error was so prejudicial as to make a fair trial impossible.

## III. Admissibility of Evidence: Testimony of Dr. Hale

[24] Schweisthal also argues that the trial court erred when it admitted the testimony of Dr. Hale regarding the domestic violence cycle.  He maintains that the testimony inherently suggested that he had committed prior bad acts of domestic violence.  The State argues that Dr. Hale's testimony was admissible pursuant to Indiana Rule of Evidence 702(a), which provides that a witness may be qualified as an expert by virtue of the witness's "knowledge, skill, experience, training, or education." *Kubsch v. State*, 784 N.E.2d 905, 921 (Ind. 2003).  Expert scientific testimony is admissible if: (1) it satisfies the above standard, (2) the scientific principles upon which the expert testimony rests are reliable, and (3) the testimony's probative value is not substantially outweighed by the danger of unfair prejudice.  *Hall v. State*, 796 N.E.2d 388, 399 (Ind. Ct. App. 2003).  It is within the trial court's sound discretion to decide whether a person is qualified as an expert witness.  *Id.*

[25] Our Supreme Court has previously determined that an expert may testify concerning the effect of domestic violence and battered woman syndrome provided that the testimony is relevant.  *Iqbal v. State*, 805 N.E.2d 401, 409-10 (Ind. Ct. App. 2004) (expert testimony allowed to educate the jury on the complexity of behavior of domestic violence victims).  Schweisthal, however, contends that this case is distinguishable from *Iqbal*.  He points out that a panel

of this Court noted in *Iqbal* that "our review of the expert's testimony reveals that the expert did not have personal knowledge of the case and had not counseled Tammy," and contends that an expert who does have personal knowledge of the case may not testify. *Id.* at 410. The State acknowledges that Dr. Hale spoke with J.S. and had personal knowledge of her case, but argues that, since Dr. Hale's testimony contained no references to J.S. or opinions regarding her personally, it was admissible.

[26] We agree with the State. The testimony provided by Dr. Hale did not reveal any personal knowledge of the case. Tr. p. 149-65. Nor did Dr. Hale offer any opinions as to J.S. in particular. Dr. Hale's testimony simply educated the jury as to domestic violence generally and explained why a victim of domestic violence might continue to contact and respond to her abuser. This was relevant, as Schweisthal used the fact that J.S. stayed in contact with him to bolster his contentions that he did not rape J.S. and that the sexual intercourse was consensual. We find Dr. Hale's testimony relevant and conclude that its probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court did not abuse its discretion in allowing Dr. Hale to testify.

# IV. Sentencing

[27] Finally, Schweisthal argues that the trial court erred when it ordered him to serve thirty-two months consecutive to his sentence in FD-198.[3] He maintains that the trial court should have considered his Indiana Risk Assessment Score as a mitigating factor and given more weight to his guilty pleas.[4] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Indeed, a trial court "may impose any sentence that is: (1) authorized by law; and (2) permissible under the Constitution of the State of Indiana . . . regardless of the presence or absence of aggravating circumstances or mitigating circumstances." Ind. Code § 35–38–1–7.1(d). A trial court abuses its sentencing discretion if its decision is clearly against the logic and effect of the facts and circumstances before it, or

---

[3] Schweisthal argues that his sentence was inappropriate, but he does not make a cogent argument concerning Indiana Appellate Rule 7(B) or address either prong of Rule 7(B). Rather, his argument is based on his contention that the trial court considered improper aggravating factors and failed to give enough weight to mitigating factors. Therefore, we review his sentence for an abuse of discretion.

[4] Schweisthal also argues in his brief that the trial court abused its discretion by considering the rape charge and evidence thereof during sentencing, despite the fact that the jury found Schweisthal not guilty of rape. We address this argument here only to point out that the trial court, in fact, went out of its way to state that it was not considering the evidence presented in regards to the rape charge: "[t]his court can only sentence you on the crimes that were charged and the crimes that the jury convicted you of. You were charged with rape and the jury said not guilty. I'm not going to use the evidence that was presented to the jury on the rape charge to enhance your sentence…." Tr. p. 32. This argument, therefore, was without merit. We remind counsel for Schweisthal that Indiana Rule of Professional Conduct 8.2(a) provides that "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." We caution counsel to heed this rule in the future.

the reasonable, probable, and actual deductions to be drawn therefrom. *Childress v. State*, 848 N.E.2d 1073, 1078 (Ind. 2006).

[28] When imposing the sentence, a trial court is not obligated to find a circumstance to be mitigating merely because it is advanced as such by the defendant. *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007). An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493. A trial court does not abuse its discretion by failing to consider a mitigating factor not argued at sentencing, and it has no obligation to weigh aggravating and mitigating factors against each other. *Id*. at 491–92.

[29] Although Schweisthal argues that the trial court erred in failing to consider his Indiana Risk Assessment Score as a mitigating factor, he failed to proffer this score at the sentencing hearing, and, therefore, his claim is waived. *Simms v. State*, 791 N.E.2d 225 (Ind. Ct. App. 2003) (holding that, when defendant fails to advance a mitigating circumstance at sentencing, he is precluded from advancing it as a mitigating circumstance for the first time on appeal). Waiver notwithstanding, the trial court had no obligation to consider the Risk Assessment Score as a mitigating factor, and we will not find that it erred in refraining from doing so.

[30] Schweisthal also contends that the trial court did not give proper weight to his guilty pleas as mitigating factors. The trial court is not required to give the

same weight to a mitigating factor as a defendant would have, *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), and "the relative weight or value assignable to reasons properly found . . . is not subject to review for abuse." *Anglemyer*, 868 N.E.2d at 491. The trial court considered the guilty pleas as a mitigating factor along with the fact that J.S., by remaining in contact with Schweisthal, facilitated the offense. However, it also identified aggravating factors, including: 1) the fact that the harm, injury, or loss suffered by the victim was greater than the elements necessary to prove the commission of the offense, 2) Schweisthal's criminal history, and 3) the fact that Schweisthal had recently violated the terms of pretrial release and violated a no contact order. The trial court found that the aggravating factors outweighed the mitigating factors, a determination that is not subject to review. *Id.* Therefore, we find no error.

[31] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.