Thomas Loren PALMER,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 18S00–9508–CR–998.

Supreme Court of Indiana.

May 12, 1997.

Kelly N. Bryan, Orlosky, Bryan and Bryan, Muncie, for Defendant–Appellant.

Pamela Carter, Attorney General, James D. Dimitri, Suzann Weber Lupton, Deputy Attorneys General, Indianapolis, for Plaintiff–Appellee.

SELBY, Justice.

A jury convicted Appellant Thomas Loren Palmer, after trial, of criminal deviate conduct and attempted rape, and found him to be a habitual offender. The trial court sentenced him to 50 years for criminal deviate conduct, 50 years for attempted rape, and 30 years as a habitual offender. The Court of Appeals remanded for the trial court to enhance either the attempted rape or criminal deviate conduct sentence with the 30 years for habitual offender status. The trial court corrected Appellant's sentence to 50 years for criminal deviate conduct and 80 years for attempted rape enhanced by the habitual offender conviction.

Appellant raises several issues which we consolidate into the following four issues for review.[1] 1) Does the record contain sufficient evidence to show that Appellant committed criminal deviate conduct and attempted rape? 2) Does the record contain sufficient evidence to support Appellant's habitual offender enhancement? 3) Did the taking of Appellant's fingerprints after lawful arrest violate his right to protection against unlawful search and seizure? 4) Did the trial court use the appropriate version of the consecutive sentencing statute when correcting the error in Appellant's sentence? Because we answer questions one, two, and four in the affirmative and question three in the negative, we affirm Appellant's conviction and sentence.

## FACTS

The evidence most favorable to the State shows that on March 5, 1993, Appellant went next door to Susan Dubois' apartment and asked to use the phone. He then returned later asking to use the phone once more. When he finished speaking on the phone, he talked with Dubois and then struck her in the face, knocking her into an aquarium. He then forced her to remove her clothes. She hit him, and he threatened to kill her or her three-month-old baby. Appellant forced Dubois to perform oral sex upon him, and throughout the evening he attempted to have vaginal intercourse with her. In the morning, she convinced him to let her leave for work and took her baby with her. Dubois went to the home of the couple for whom she provides child care, and the woman for whom Dubois works reported the crimes to the police.

## DISCUSSION

### I.

■ "When reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of the witnesses. We affirm the conviction if, looking to the evidence and reasonable inferences therefrom which support the verdict, there is substantial evidence of probative value to support the conclusion reached by the trier

---

1. The parties first filed a set of briefs with this Court which included the issues raised in the Court of Appeals. Appellant then filed a petition to amend his brief with an additional brief dealing with the sentencing issue. This Court approved this brief as an additional brief by an order dated September 29, 1995. The State filed a reply brief. We have considered the issues raised in all briefs.

of fact." *Jones v. State,* 589 N.E.2d 241, 242 (Ind.1992) (citations omitted).

Appellant first claims that Dubois' testimony is insufficient to establish that he committed the crimes of criminal deviate conduct and attempted rape. In regard to criminal deviate conduct, Appellant argues that Dubois' testimony that he forced her to perform "oral sex" does not establish that her mouth made contact with his sex organ. Regarding attempted rape, Appellant argues that Dubois' testimony that "he tried to penetrate me but he kept losing his erection" and that she "felt him pushing on my vagina" does not establish that he attempted to penetrate her with his sex organ. We find the record contained sufficient evidence for the jury to find Appellant guilty of criminal deviate conduct and attempted rape.

To establish criminal deviate conduct the State must prove deviate sexual conduct occurred. IND.CODE § 35–42–4–2. Deviate sexual conduct is defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person ..." I.C. § 35–41–1–9.

Rape is defined as: "A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force ..." I.C. § 35–42–4–1. If the threat is one of deadly force, then a class A felony has been committed. *Id.* To establish rape, the State must prove that sexual intercourse occurred. *Id.* Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35–41–1–26. To establish attempted rape, the State must prove that a defendant acted "with the culpability required for the commission of" rape and that he engaged "in conduct that constitutes a substantial step toward commission of the crime." I.C. § 35–41–5–1(a).

■ Where testimony contains sufficient specific details, in light of the entire testimony, to support a jury's conclusion that rape or deviate sexual conduct occurred, this Court will uphold the jury's conclusion. *Brown v. State,* 442 N.E.2d 1109, 1113–14 (Ind.1982); *Lindsey v. State,* 257 Ind. 78, 272 N.E.2d 458 (1971). This Court has found

that testimony that "then he started having intercourse with me" or "he also, uh, re-entered and finished his intercourse" is sufficient, in the context of describing the events of a rape, for the jury to determine that sexual intercourse occurred. *Brown,* 442 N.E.2d at 1113. A jury may conclude a defendant forced a woman to place her mouth on his sex organ based on testimony that "he made me put my mouth on him." *Overton v. State,* 161 Ind.App. 650, 317 N.E.2d 467, 471 (1974).

■ Dubois testified at trial that Appellant forced her to perform oral sex on him. She also testified that he threatened to kill her if she bit him and that later he went from sucking on her "breast to down and performing oral sex" on her. (R. at 79–80.) The jury could reasonably conclude from this testimony that Appellant forced Dubois to engage in an act involving her mouth and his sex organ. Dubois' testimony clearly shows that she was not unfamiliar with sexual terms or conduct. Thus, her use of the phrase "oral sex" was well within what the jury could have found to be a basis for criminal deviate conduct.

■ Further, Dubois testified that, "He tried to penetrate me, but he kept losing his erection." (R. at 81.) She knew he was trying to penetrate her because, as she stated, "I felt him pushing on my vagina." (R. at 82.) The jury could reasonably conclude from this testimony, taken in light of Dubois' entire story, that Appellant tried to penetrate her sex organ with his. Dubois used specific terms including "penetrate," "erection," and "vagina"; although perhaps not a picture of anatomical clarity, this testimony was certainly sufficient for the jury to find attempted rape.

■ Appellant further challenges the sufficiency of the evidence supporting the jury's finding that he is a habitual offender. The evidence on the habitual offender charge consisted of two prior unrelated rape convictions of Appellant. Appellant does not dispute that the State proved that a jury convicted Appellant of rape in 1983 in Floyd County. Appellant challenges only the

State's proof that he committed a rape in 1971 in Bartholomew County. To prove Appellant guilty of the 1971 rape, the State called Officer Jerry Golden. Officer Golden testified to the match between fingerprints he took from Appellant, on August 31, 1993, the second day of trial, and fingerprints of a Thomas Palmer contained in the Indiana State Police Repository. Appellant claims that the State failed to produce any evidence that the fingerprints on file at the Indiana State Police Central Repository linked Appellant to the 1971 Bartholomew County rape conviction.

■■■ In order to prove that a defendant is a habitual offender, "[T]he State must prove that the defendant was convicted and sentenced for two prior unrelated felonies." *Williams v. State*, 525 N.E.2d 1238, 1241 ·(Ind.1988); I.C. § 35–50–2–8. Proof of a common name does not show that a defendant committed a prior crime. *Mickens v. State*, 439 N.E.2d 591, 593 (Ind.1982). Evidence that fingerprints taken from a defendant convicted of a prior crime match the present defendant's fingerprints is substantial evidence that the same person committed both crimes. *Id; Martin v. State*, 490 N.E.2d 309, 314 (Ind.1986).

Appellant does not dispute that one Thomas Palmer committed a rape in Bartholomew County in 1971, as shown by certified court documents. Nor does he dispute that Officer Golden took a set of Appellant's fingerprints which matched the fingerprints in the Indiana Central Repository. Appellant does claim that the fingerprints in the Repository do not link him to the 1971 rape. The documents from the Indiana Central Repository do, however, sufficiently identify a Thomas Palmer, whose fingerprints the Repository holds, as the defendant sentenced to rape in Bartholomew County on December 10, 1971.[2] The match of the Repository fingerprints

with those taken by Officer Golden was sufficient evidence from which the jury could conclude that Appellant was convicted of rape in Bartholomew County. Furthermore, the proof of this conviction and that in Floyd County constituted sufficient evidence from which the jury could conclude that Appellant was a habitual offender.

II.

■■ Officer Golden took Appellant's fingerprints on August 31, 1993, the second day of trial. At trial, Appellant objected to the admission of the fingerprints. Appellant argues that taking his fingerprints constituted an unreasonable seizure under both the United States and Indiana Constitutions. He argues that Officer Golden took the fingerprints, without a warrant, for use as evidence at trial. We find no constitutional violation.

■■■ The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect against unreasonable search or seizure of persons. U.S. CONST. Amend. IV; IND. CONST. art. I, § 11. Fingerprinting "involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." *Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 1398, 22 L.Ed.2d 676 (1968). Fingerprinting is not the type of intrusion, regardless of its use as evidence or for identification purposes, protected by the Constitution. Rather, fingerprints are an identifying factor readily available to the world at large. *See McClain v. State*, 274 Ind. 250, 410 N.E.2d 1297, 1300 (1980); *United States v. Dionisio*, 410 U.S. 1, 14–15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973). "[B]y requiring a person properly under arrest to submit to fingerprinting procedures, the state" does "not engage in a seizure within the proscription of the Fourth Amendment or of Article I, Section 11 of the Constitution

2. While the documents from the Repository are presented in a somewhat confusing manner, leading to the confusing argument by Appellant, they do clearly link Appellant to the 1971 rape. The Repository contains an identification sheet for a sentence of rape in Bartholomew County on 12–10–72 for one Thomas Palmer, who is pictured with identification number 2954 and another sheet containing prints with the same iden-

tification number. There is also a set of prints dated 12–14–72 with the prisoner number 2954 which matches the number of an identification sheet for a prisoner taken into custody for a rape conviction, which pictures Thomas Palmer. The documents also include an identification sheet for a Thomas Palmer arrested on 10–2–71 for rape in Bartholomew County with another sheet containing a set of prints taken 10–9–71.

of the State of Indiana." *Porter v. State*, 503 N.E.2d 424, 425 (Ind.Ct.App.1987).

Officer Golden took Appellant's fingerprints on August 31, 1993, while Appellant was incarcerated. There is no allegation that Appellant's arrest was improper. Thus, Officer Golden took Appellant's fingerprints while he was standing trial pursuant to lawful arrest. Because fingerprinting someone properly under arrest does not constitute search or seizure, taking Appellant's fingerprints did not violate Appellant's rights.

### III.

The trial court sentenced Appellant to 50 years for criminal deviate conduct, 50 years for attempted rape, and 30 years as a habitual offender, to be served consecutively. The Court of Appeals remanded for the trial court to enhance either the attempted rape or criminal deviate conduct sentence with the 30 years for habitual offender status. The trial court corrected Appellant's sentence to 50 years for criminal deviate conduct and 80 years for attempted rape enhanced by the habitual offender conviction, to be served consecutively.

■■■■■■ The trial court corrected Appellant's sentence under the 1993 version of the consecutive sentencing statute. Appellant argues that the trial court should have corrected Appellant's sentence under the 1994 version of the consecutive sentencing statute.[3] The 1993 version of the consecutive sentencing statute read, "[T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively." I.C. § 35–50–1–2(a). The 1994 amendment revised the statute to read,

[T]he court shall determine whether terms of imprisonment shall be served concur-

rently or consecutively.... However, except for murder and felony convictions for which a person receives an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

P.L. 164–1994. Under the amended statute, Appellant would be entitled to a sentence of eighty years.

■■■■■■ Generally, courts must sentence defendants under the statute in effect at the time the defendant committed the offense. *State v. Alcorn*, 638 N.E.2d 1242, 1244 (Ind. 1994). When, however, the legislature enacts an ameliorative amendment without including a specific savings clause, the new statute will apply to all those sentenced after its effective date.[4] *Lewandowski v. State*, 271 Ind. 4, 389 N.E.2d 706, 707 (1979). When a court sentences a defendant before the effective date of an ameliorative amendment, the new statute does not apply unless the legislature expressly designates that the new statute applies retroactively. *Rowold v. State*, 629 N.E.2d 1285, 1288 (Ind.Ct.App.1994); *see Davis v. State*, 446 N.E.2d 1317, 1322 (Ind. 1983). If an appellate court remands for a technical correction of a sentence, and not for re-sentencing, the general rule, that the court sentences the defendant under the statute in effect at the time the defendant committed the offense, applies. *Rowold*, 629

---

3. This argument was not raised by Appellant's counsel at the sentencing correction hearing on April 27, 1995. It was clearly an argument which counsel could have made at that time since the 1994 version of the consecutive sentencing statute went into effect July 1, 1994. Nonetheless, the parties did not address the issue of waiver, and we, therefore, proceed to reach the merits of the issue.

4. The test to determine whether the legislature has enacted an ameliorative statute, where they

have not expressly so stated, is whether the maximum penalty under the new statute is lower than the maximum penalty under the old. *Davis v. State*, 271 Ind. 676, 395 N.E.2d 232, 234 (1979); *Lunsford v. State*, 640 N.E.2d 59, 61 (Ind.Ct.App. 1994). The Court of Appeals correctly held that the 1994 amendment to I.C. § 35–50–1–2, the statute at issue in this case, is an ameliorative amendment, without a specific savings clause, and applies to defendants sentenced *after* its effective date. *Tedlock v. State*, 656 N.E.2d 273, 276 (Ind.Ct.App.1995).

N.E.2d at 1288. In this situation, the trial court is bound to follow the mandate of the appellate court and simply make the technical correction to the sentence. *Town of Flora v. Indiana Serv. Corp.*, 222 Ind. 253, 53 N.E.2d 161, 164 (1944); *Jordan v. State*, 631 N.E.2d 537 (Ind.Ct.App.1994).

Appellant committed his offenses on March 5, 1993, at which time the 1993 version of the consecutive sentencing statute was in effect. I.C. § 35–50–1–2 (1993). The trial court sentenced him on September 20, 1993, long before the effective date, July 1, 1994, of the 1994 version of the consecutive sentencing statute. P.L. 164–1994. The Court of Appeals, on March 29, 1995, directed the trial court to make the technical correction to the sentence. The Court of Appeals mandated the trial court to enhance one of the underlying crimes by thirty years rather than sentencing Appellant to thirty years as a free standing sentence for habitual offender. On April 27, 1995, the trial court made the instructed correction, as it was bound by the Court of Appeals memorandum decision to do. Clearly, the court sentenced Appellant before the effective date of the 1994 version of the statute, and the 1993 statute properly applied at his sentencing. The mere correction of the sentence after the enactment of the 1994 version did not alter the applicability of the 1993 version to his sentence.

## CONCLUSION

We affirm the conviction and sentence.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.