Shane WALSMAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 69A04–0512–CR–701.

Court of Appeals of Indiana.

Oct. 23, 2006.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Shane Walsman appeals from his conviction and sentence for Robbery, as a Class B felony, following a jury trial. Walsman presents three issues for review, namely:

1. Whether the evidence is sufficient to support his conviction.
2. Whether the trial court abused its discretion when it sentenced him.
3. Whether the trial court erred when it ordered him to pay restitution.

We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

On January 20, 2004, a white man dressed in dark clothes and wearing a black mask entered the Sunman Package Store in Ripley County. The man pointed a gun at the store's owner and demanded that she give him all of her money. The owner gave the man the contents of the cash register, which totaled more than $700. The man then ordered the owner to lie face down on the floor and put her hands behind her head. The owner com-

plied, but when she heard the door close, she activated an alarm.

In the course of investigating the crime, officers encountered one of Walsman's roommates, Angela Slayback. Slayback told police that Walsman had robbed the store and that she had made a mask for Walsman from the sleeve of one of her black shirts. Police found the mask behind the store and a black shirt missing a sleeve in the apartment that Walsman shared with Slayback. DNA testing performed on the mask did not rule out Walsman as having worn it.

Gerald Frensemeier, another roommate, testified that on January 20, 2004, he and Walsman had talked about robbing the store and that Frensemeier had obtained a gun from Leon Gabbard for Walsman. The store could be seen from Gabbard's apartment. On the day of the robbery, Gabbard saw Walsman in front of the store, and Frensemeier saw Walsman exit the store. Walsman had "a wad of money" when he returned from the store and later gave cash to Gabbard and Frensemeier. Transcript at 252.

The State charged Walsman with Armed Robbery, as a Class B felony; Intimidation, as a Class C felony; Criminal Recklessness, as a Class D felony; Pointing a Firearm, as a Class D felony; Receiving Stolen Property, as a Class D felony; Possession of Marijuana, Hash Oil, or Hashish, as a Class A misdemeanor; Possession of Paraphernalia, as a Class A misdemeanor; Possession of a Handgun Without a Permit, as a Class A misdemeanor; and Visiting a Common Nuisance, as a Class B misdemeanor. The State later amended the Robbery count and dismissed all other counts.[1]

A jury convicted Walsman of robbery, as a Class B felony. The trial court sentenced Walsman to fifteen years, with 664 days of pre-trial jail time credit, three years suspended, and three years of probation. As a condition of probation, the trial court ordered Walsman to pay restitution. Walsman's restitution obligation is owed jointly and severally with Frensemeier. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of Evidence

■■■■ Walsman first contends that the evidence is insufficient to support his conviction. When reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor judge the credibility of witnesses. *Grim v. State,* 797 N.E.2d 825, 830 (Ind.Ct.App.2003). Rather, we consider only the evidence that is favorable to the verdict along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

To prove the offense of robbery, as a Class B felony, the State was required to show that Walsman knowingly or intentionally took property from the store's owner by putting the owner in fear. *See* Ind.Code § 35-42-5-1. The offense is a Class B felony if committed while armed with a deadly weapon. *Id.* Walsman "maintain[s] his innocence and claims that the witnesses' testimony is suspect given their involvement in the crime." Appellant's Brief at 5. But Walsman's claim

---

1. Nothing in the appendix indicates in what way the State amended the robbery charge, but the record shows that the charge remained one for a Class B felony.

amounts to a request that we reweigh the evidence, which we will not do.

The evidence shows that Walsman and Frensemeier consulted about robbing the store and that Slayback suggested that Walsman wear dark clothes and a mask. Slayback made the mask for Walsman from a sleeve taken off one of her black shirts, and the rest of that shirt was found in their apartment. Frensemeier and Gabbard testified that they saw Walsman at the liquor store on the day of the crime, and both testified that Walsman later gave them cash. Police found a black mask behind the store, and DNA testing did not rule out Walsman as having worn it. We conclude that the reasonable inferences taken from the evidence are sufficient to support Walsman's robbery conviction.

### Issue Two: Sentence

Walsman next argues that the trial court abused its discretion when it imposed sentence. Specifically, Walsman alleges that the trial court should have applied the presumptive sentencing scheme in effect when the offense was committed instead of the advisory scheme in effect when he was sentenced. He also claims that one of the aggravators identified by the trial court was improper. We address each contention in turn.

### A. Presumptive or Advisory Sentence

Walsman first claims that the trial court should have sentenced him under the presumptive sentencing scheme that was in effect when he committed the offense. He further contends that the advisory sentencing scheme "cannot be applied retroactively without implicating ex post facto prohibitions." Appellant's Brief at 8. We must agree.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Four years later, in *Blakely v. Washington*, 542 U.S. 296, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court applied the *Apprendi* rule to the statutory sentencing scheme in Washington. The Washington sentencing scheme provided for a "standard range," but the trial judge could impose a sentence above the standard range if he found substantial and compelling reasons to justify an exceptional sentence. *Blakely*, 542 U.S. at 299, 124 S.Ct. 2531. The Court held that the "statutory maximum" in Washington's sentencing scheme was the standard range because a finding that additional facts existed was necessary to impose a greater sentence. *Id.* at 303–04, 124 S.Ct. 2531. The Court further held that the existence of additional facts to support a sentence longer than the "statutory maximum" must be determined by a jury to avoid running afoul of *Apprendi. Id.*

Following *Blakely*, the Indiana Supreme Court held in *Smylie v. State*, 823 N.E.2d 679, 684–85 (Ind.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005), that Indiana's sentencing scheme violated the *Apprendi* rule. Specifically, the sentencing statutes in effect at that time provided for a presumptive sentence and allowed for a greater sentence if aggravating factors existed. *See, e.g.,* Ind. Code §§ 35–50–2–4 through –7 (amended 2005). As a result of the court's decision in *Smylie*, our legislature amended the sentencing statutes to provide for an advisory sentence within a specific range. Under the sentencing statutes as amended, the range for each sentence remained the same as the range under the former presumptive sentence, and the presumptive sentence has been replaced with an "advisory sentence." See, *e.g.,* Ind.Code §§ 35–

50–2–4 through –7. The amendments became effective on April 25, 2005.

Here, the issue presented concerns a narrow class of cases in which a defendant committed an offense before the sentencing statute amendments became effective but was sentenced after the effective date. Walsman's case falls within that class. Thus, we must determine whether Walsman should have been sentenced under the sentencing statute in effect when he committed the crime or under the amended sentencing statute that was in effect when he was sentenced. Panels of this court have reached different conclusions on that issue. At least one has held that advisory sentencing applies. *See Samaniego–Hernandez v. State,* 839 N.E.2d 798 (Ind.Ct. App.2005). But at least three panels have held that the presumptive sentencing scheme applies. *See Weaver v. State,* 845 N.E.2d 1066 (Ind.Ct.App.2006), *trans. denied; Patterson v. State,* 846 N.E.2d 723 (Ind.Ct.App.2006); *Henderson v. State,* 848 N.E.2d 341 (Ind.Ct.App.2006).

■ In general, "the law in effect at the time that the crime was committed is controlling." *Holsclaw v. State,* 270 Ind. 256, 384 N.E.2d 1026, 1030 (1979). But an "exception to this rule exists for remedial statutes, which are statutes intended to cure a defect or mischief that existed in a prior statute[, namely, a remedial statute]." [2] *Martin v. State,* 774 N.E.2d 43, 44 (Ind.2002). "When a remedial statute is involved, a court must construe it to 'effect the evident purpose for which it was enacted[.]'" *Id.* (quoting *Conn. Mut. Life Ins. Co. v. Talbot,* 113 Ind. 373, 14 N.E. 586, 589 (1887)) (alteration in original). "Ac-

cordingly, remedial statutes will be applied retroactively to carry out their legislative purpose unless to do so violates a vested right or constitutional guaranty." *Id.* But "not all remedial statutes are automatically applied retroactively." *State v. Pelley,* 828 N.E.2d 915, 919 (Ind.2005).

Unless there are strong and compelling reasons, statutes will normally be given prospective application. While statutes addressing merely procedural and remedial matters may be applied retroactively, such application is not required.

* * *

■ Even under [the] argument that the statute is merely procedural or remedial, retroactive application is the exception, and such laws are normally to be applied prospectively absent strong and compelling reasons.

*Id.* (quoting *Gosnell v. Ind. Soft Water Serv., Inc.,* 503 N.E.2d 879, 880 (Ind.1987) (superseded by statute on other grounds)).

■ Applying the rules outlined above, an amended sentencing statute should not be applied retroactively to offenses committed prior to the effective date of that statute unless (1) the new statute is remedial, (2) a strong and compelling reason exists for applying it retroactively, and (3) retroactive application does not violate a vested right or a constitutional guaranty. *See id.; Martin,* 774 N.E.2d at 44. The question presented in this case then is whether retroactive application of the amended Class B felony sentencing statute, Indiana Code Section 35–50–2–5, satisfies all three prongs of the test. We conclude that the amended stat-

---

**2.** Another exception exists for ameliorative statutes, which are statutes that decrease the maximum penalty. *See Palmer v. State,* 679 N.E.2d 887 (Ind.1997); *Hooker v. State,* 799 N.E.2d 561 (Ind.Ct.App.2003). The sentencing statute at issue here, Indiana Code Sec-

tion 35–50–2–5, is not ameliorative because it does not provide for a lower maximum penalty than the pre-amendment statute. *See Palmer,* 679 N.E.2d at 893; *Hooker,* 799 N.E.2d at 575.

ute violates the retroactive application or ex post facto prong as applied on the facts of this case.

■ Article I, Section 10 of the United States Constitution provides in part: "No State shall ... pass any .... ex post facto Law." And Indiana Constitution Article I, Section 24, provides that "[n]o ex post facto law ... shall ever be passed." "The purpose of the prohibition against ex post facto laws is twofold. First, it is to prevent the legislature from abusing its power by 'enacting arbitrary or vindictive legislation.' Second, it is to give fair notice of any changes in the law." *Stroud v. State*, 809 N.E.2d 274, 287 (Ind.2004) (quoting *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)).

The United States Supreme Court has stated which laws will generally be considered ex post facto:

It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *see also Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (stating that the "*Beazell* formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause.").[3] The Indiana Supreme Court "has provided a somewhat different definition of what

laws are ex post facto but the concept is the same." *Stroud*, 809 N.E.2d at 288. That court has held that a "law is ex post facto if it 'substantially disadvantages [a] defendant because it increases his punishment, changes the elements of or ultimate facts necessary to prove the offense, or deprives [a] defendant of some defense or lesser punishment that was available at the time of the crime.'" *Id.* (quoting *Crawford v. State*, 669 N.E.2d 141, 150 (Ind. 1996)) (alterations in original).

The Supreme Court addressed whether a particular law retroactively increases a criminal punishment in *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). There, the penalty for grand larceny was imprisonment for not less than six months and not more than fifteen years at the time the defendants committed the offense. When the defendants were sentenced, the sentencing statute had been amended to provide for a mandatory fifteen-year sentence. The Court held that the defendants were wrongly sentenced under the amended statutes, explaining:

The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. It is for this reason that *an increase in the possible penalty is ex post facto, regardless of the length of the sentence actually imposed*, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.

*Lindsey*, 301 U.S. at 401, 57 S.Ct. 797 (emphasis added). More recently, the Court determined that retroactive applica-

---

**3.** Previously, the Court evaluated ex post facto claims by deciding whether the amendment or new statute resulted in a substantive or merely procedural change. *See, e.g., Dobbert*

*v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). The Court has clarified the test to be that applied in *Beazell*. *See Collins*, 497 U.S. at 43, 110 S.Ct. 2715.

tion of a Georgia law permitting the extension of intervals between parole considerations did not violate the Ex Post Facto Clause. *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). There, the Court framed the issue as whether the risk of prolonging incarceration was "inherent in the framework" of the amended rule at issue or "otherwise [ ] demonstrated on the record." *Id.* at 251, 120 S.Ct. 1362. In other words, the question presented was whether the rule violated the Ex Post Facto Clause either on its face or as applied.

The "maximum penalty" under *Blakely* is the penalty that can be imposed without finding the existence of any additional facts. *See Blakely,* 542 U.S. at 303–04, 124 S.Ct. 2531. In the present case, at the time of the offense, the sentencing statute for Class B felonies provided for a presumptive sentence of ten years, which could be enhanced or reduced based on a finding of aggravating or mitigating factors. Ind.Code § 35–50–2–5 (amended 2005). As of April 25, 2005, the statute provides that a person convicted of a Class B felony "shall be imprisoned for a fixed term of between six (6) years and twenty (20) years, with the advisory sentence being ten (10) years." Ind.Code § 35–50–2–5.

Before the amendment, the maximum penalty for a Class B felony was the presumptive term of ten years. Now the maximum penalty under Indiana Code Section 35–50–2–5 is twenty years. Thus, applying Indiana Code Section 35–50–2–5 as amended effective April 25, 2005, to offenses committed before that date violates the prohibition against ex post facto laws because it increases the maximum penalty that a court may impose without submitting additional facts to a jury. *See Lindsey,* 301 U.S. at 401, 57 S.Ct. 797; *Garner,* 529 U.S. at 251, 120 S.Ct. 1362. In sum, following *Blakely* and *Smylie,* the advisory sentencing scheme violates the constitutional prohibition against ex post facto laws when applied to Walsman and other defendants similarly situated. As a result, the trial court erred when it sentenced Walsman under the advisory sentencing scheme.[4]

### B. Aggravating Factors

Having determined that Walsman should not have been sentenced under the advisory sentencing scheme, we next consider whether the trial court properly sentenced Walsman under the presumptive sentencing scheme. Specifically, we consider whether, under the presumptive sentencing scheme, the trial court properly identified, determined, and balanced aggravating factors. Walsman contends that the trial court erred in identifying the seriousness of the crime as an aggravating factor and that, as a result, the trial court abused its discretion when it enhanced his sentence. We agree.

Sentencing determinations rest within the trial court's discretion. *Powell v. State,* 769 N.E.2d 1128, 1134 (Ind.2002). We review trial court sentencing decisions only for an abuse of discretion, including a trial court's decision to increase the presumptive sentence because of aggravating circumstances. *Id.* When a trial court imposes an enhanced sentence under former Indiana Code Section 35–50–2–5, it must state the reasons underlying the sentencing decision. Ind.Code § 35–38–1–3. An adequate explanation contains at least three elements: (1) a list of the significant aggravating and mitigating factors, (2) a

---

4. Because we determine on ex post facto grounds that Walsman should not have been sentenced under the advisory sentencing scheme, we need not address his argument under the Equal Protection Clause.

statement of the specific reason why each factor is aggravating or mitigating, and (3) an evaluation and balancing of the factors. *Scheckel v. State,* 655 N.E.2d 506, 509 (Ind. 1995).

▮▮▮▮ A trial court has discretion to determine the weight accorded any aggravating or mitigating factors. *See Simms v. State,* 791 N.E.2d 225, 233 (Ind. Ct.App.2003). When a court has relied on valid and invalid aggravators, the standard of review is whether we can say with confidence that, after balancing the valid aggravators and mitigators, the sentence enhancement should be affirmed. *See Trusley v. State,* 829 N.E.2d 923, 927 (Ind.2005) (where the court balanced the valid aggravators and mitigators and stated "with confidence" that Trusley's sentence enhancement should be affirmed).

▮▮▮▮ Walsman argues that the trial court improperly identified the seriousness of the crime as an aggravator. We agree. That factor "may only be used when a trial court is considering imposition of a sentence which was shorter than the presumptive sentence." *Taylor v. State,* 840 N.E.2d 324, 340 (Ind.2006) (internal citation omitted). Here, there is no indication that the trial court considered a sentence below the presumptive. Thus, the trial court erred when it identified that factor as an aggravator to support the imposition of an enhanced sentence.

▮▮▮▮ The only remaining aggravator relied on by the trial court to enhance the sentence was Walsman's criminal history. A defendant's sentence may be enhanced on the basis of prior convictions without violating the Sixth Amendment rights addressed in *Blakely. Bryant v. State,* 841 N.E.2d 1154, 1156 (Ind.2006). But "whether and to what extent a sentence should be enhanced turns on the weight of an individual's criminal history. This weight is measured by the number of prior convictions and their gravity, by their proximity or distance from the present offense, and by any similarity or dissimilarity to the present offense that might reflect on a defendant's culpability." *Id.; see also Wooley v. State,* 716 N.E.2d 919, 929 (Ind.1999) (holding that trial court must identify all "significant" aggravators and "[s]ignificance varies based on the gravity, nature and number of prior offenses as they relate to the current offense.").

▮▮▮ Here, Walsman's criminal history consists of an adult conviction for Operating a Vehicle While Intoxicated, as a Class C misdemeanor, and juvenile adjudications for Incorrigibility, Unlawful Possession of a Legend Drug, and a CHINS adjudication.[5] We cannot determine from the record whether the CHINS adjudication is based on allegations of delinquency or neglect. Thus, that adjudication may not be considered part of Walsman's criminal history on review.

The remaining juvenile adjudications, for incorrigibility and possession of a legend drug, and the single adult conviction for operating while intoxicated, as a Class C misdemeanor, are not on a par with the current offense, armed robbery, in gravity or nature. And no offense in Walsman's criminal history was committed while armed. Thus, Walsman's criminal history cannot be considered a significant aggravator in the context of a sentence for armed robbery. *See Wooley,* 716 N.E.2d at 929.

We conclude that the seriousness of the crime was not a proper aggravator and Walsman's criminal history was not a significant aggravator. The trial court identi-

---

5. Juvenile adjudications may be considered as "prior convictions" for purposes of sentencing under *Blakely. Mitchell v. State,* 844 N.E.2d 88, 92 (Ind.2006).

fied no other aggravators in support of an enhanced sentence. Thus, the trial court abused its discretion when it imposed an enhanced sentence.[6] We instruct the trial court to re-sentence Walsman and impose a presumptive sentence.

### Issue Three: Restitution

▇ Walsman also asserts that the trial court erred when it ordered him to pay restitution. The State does not contest that assertion. As a condition of probation, the court may require a person to "[m]ake restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim. When restitution or reparation is a condition of probation, the court shall fix the amount, *which may not exceed an amount the person can or will be able to pay,* and shall fix the manner of performance." Ind.Code § 35–38–2–2.3(a)(5) (emphasis added). The trial court must determine a defendant's ability to pay the amount of restitution ordered. *Miller v. State,* 502 N.E.2d 92, 96 (Ind.1986).

Here, the trial court ordered Walsman to pay restitution in the approximate amount of $900 to the store he robbed.[7] But the trial court made no finding regarding Walsman's ability to pay. Indeed, immediately after ordering restitution, the trial court noted that Walsman is indigent and, as a result, waived court costs. We conclude that the trial court erred when it failed to determine on the record Walsman's ability to pay restitution. On remand, we instruct the trial court to determine Walsman's ability to pay. *See Miller v. State,* 502 N.E.2d 92, 95–96 (Ind.1986).

### Conclusion

We hold that the evidence is sufficient to support Walsman's robbery conviction. We further hold that the trial court erred when it sentenced Walsman under the advisory sentencing scheme. Instead, Walsman should have been sentenced under the presumptive sentencing scheme. The trial court also erred when it identified the seriousness of the crime as an aggravator and Walsman's criminal history as a significant aggravator. Without any valid aggravators, we hold that the trial court abused its discretion when it enhanced Walsman's sentence. In addition, the trial court erred when it ordered Walsman to pay restitution without first determining his ability to pay. As a result, we reverse and remand to the sentencing court to hold a hearing on Walsman's ability to pay restitution. We further instruct the trial court to issue an amended sentencing order, without a hearing, and to issue or make any other documents or docket entries necessary to impose a presumptive sentence of ten years with 664 days pretrial jail time credit, two years suspended, and two years probation.

Affirmed in part, reversed in part, and remanded with instructions.

ROBB, J., concurs.

SHARPNACK, J., concurs with separate opinion.

---

6. Because we determine that the seriousness of the crime is not a valid aggravator and that Walsman's criminal history is not a significant aggravator on these facts, we need not address Walsman's *Blakely* claim.

7. The sentencing order does not specify the amount to be repaid. According to the transcript of the sentencing hearing, the restitution amount is the amount that was stolen less the amount that was recovered from Walsman upon his arrest. That balance is "in the neighborhood of" $900. Transcript at 371. The trial court ordered Walsman to be jointly and severally responsible for paying the balance with Frensemeier.

SHARPNACK, Judge, concurring.

I concur, but write to clarify that it is because the aggravators needed to enhance Walsman's sentence were not proper aggravators, that application of the advisory sentence regime would violate the prohibition against ex post facto laws. Under the presumptive sentence regime, Walsman could not be sentenced, as we conclude, to more than the presumptive sentence. Under the advisory sentence regime, Walsman could be sentenced to any sentence within the range for a class B felony without regard to aggravators or the lack of them.

Where there are aggravators that would support an enhanced sentence under the presumptive sentence regime and would not implicate *Blakely* concerns, application of the advisory sentence regime would not expose the defendant to a possibly more severe sentence.

As a practical matter, it would appear that analysis of the sentence under the presumptive regime should be first done. If the sentence is properly enhanced under that regime, it would also be proper under the advisory sentence regime. If the sentence is improperly enhanced under the presumptive sentence regime, it would violate ex post facto to apply the advisory sentence.