JOSHUA R. KETCHEM, Appellant-Defendant,
v.
STATE OF INDIANA, Appellee-Plaintiff.
No. 48A05-0512-CR-743.
Court of Appeals of Indiana.
December 5, 2006.
THOMAS G. GODFREY, Anderson, Indiana, ATTORNEY FOR APPELLANT.
STEVE CARTER, Attorney General of Indiana, GEORGE P. SHERMAN, Deputy Attorney General, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE.

MEMORANDUM DECISION
VAIDIK, Judge.

Case Summary
Joshua Ketchem appeals from his convictions and sentences for attempted murder and prisoner possession of a dangerous device. He brings several arguments before this Court: (1) that the trial court abused its discretion when it denied his motion to exclude evidence; (2) that his separate convictions for these two crimes violate the principles of double jeopardy; (3) that the trial court abused its discretion when it cited aggravators not found by a jury or otherwise permissible under Blakely v. Washington; and (4) that the trial court abused its discretion when it ran his sentences consecutively. Finding no error either at trial or sentencing, we affirm the trial court.

Facts and Procedural History
In 2005, Defendant Joshua Ketchem was serving a twelve-year sentence with the Indiana Department of Correction for his convictions on charges of conspiracy to commit battery and battery by means of a deadly weapon. Ketchem and inmates Michael Gibson, David Sidener, and Scott Simmons were incarcerated in the same range of cells at the Pendleton Correctional Facility. Sidener had previously written a letter to prisoner officials indicating that he had information regarding the stabbing of a prison guard. The persons involved in the stabbing were friends of Gibson, and in August 2004, Gibson informed Sidener that he knew of the letter.
On March 5, 2005, Sidener came to Gibson's cell and asked him to go to the prison's "recreation pad" facility with him. The pair, along with Simmons and Ketchem, were admitted to the recreation pad by a prison guard. Sidener immediately walked to a telephone in the area and placed a call. While Sidener was on the phone, Gibson told Simmons, in Ketchem's presence, that Sidener had "snitched on some of his affiliated brothers," and "I'm gonna take him [Sidener] out." Tr. p. 441, 443. Simmons saw that Ketchem had a double-edged "shank" in his pants.
Several minutes later, Ketchem approached Sidener, who was still on the telephone. Ketchem kicked Sidener in the eye and began stabbing him. Gibson also began stabbing Sidener with another weapon. Gibson told Sidener, "[Y]ou're gonna die you Jewish bi***." Id. at 174. Sidener, who was now bleeding onto the floor, screamed and attempted to fend off the attack. This alerted Correctional Officer Harvey Pollard to the attack. He witnessed both Gibson and Ketchem on top of Sidener, and he at first thought they were hitting him. He soon noticed blood, however, and realized Sidener was being stabbed. Officer Pollard radioed for assistance, then went to the recreation pad's gated entrance and ordered the men to stop. Ketchem then backed away from Sidener, but Gibson continued attacking him. Officer Pollard sprayed Gibson with a chemical agent through the gate, at which point Gibson backed away and Officer Pollard saw that he had a knife in his hand.
Another officer on the scene radioed other officers that there was a disturbance involving a weapon. Gibson then returned to Sidener and stabbed him in the chest an additional five or six times. During this period, officers were attempting to gain entry to the recreation pad, but Ketchem was holding the gate shut against them. Officer Pollard sprayed Ketchem with the chemical agent, and when Ketchem backed away, officers entered the area and removed Sidener, who was taken to the hospital. The officers ordered Ketchem and Gibson to drop their weapons, at which point Gibson removed his knife, which had been attached to his hand by either a piece of cloth or a lanyard, and then threw it down. Ketchem threw down his knife as well, but he claimed that Sidener had actually pulled that knife on him and Gibson and that he only acquired it after getting it away from Sidener. Officers observed that neither Ketchem nor Gibson was wounded.
Sidener's wounds included multiple stab wounds to the chest, right hand, and left leg. While none of the wounds proved fatal, several of them, particularly two wounds to the lower chest, were near vital organs and could have been fatal.
After Ketchem and Gibson were moved to holding cells, Officer Pollard overheard them laughing about the incident. Ketchem also yelled to another inmate, Kenneth Munson, that if he had been at the scene with them, "we would have killed you." Id. at 278. Ketchem also stated, "[W]e tried to kill that bi***, you shoulda heard that bi*** screaming, shoulda heard him screaming like a baby . . . ." Id. at 293. When Munson began arguing with Ketchem, Gibson yelled, "if it was you, you'd be dead. As soon as we get to you, you're dead, you're next bi***." Id. Another inmate, Gerry Deckor, also overheard Ketchem talking about the attack, and he heard Ketchem say "we finally got that bi***." Id. at 329. Ketchem also threatened Officer Pollard, telling him not to repeat what he overheard.
On March 16, 2005, the State charged Ketchem with Count I: Attempted Aggravated Battery, a Class B felony,[1] County II: Attempted Murder, a Class A felony,[2] and Count III: Prisoner Possession of a Dangerous Device or Material, a Class B felony.[3] A joint jury trial for Ketchem and Gibson, who was similarly charged, was scheduled for November 7, 2005, and the State filed its Notice of Anticipated State's Witnesses on October 25, 2005. The filing stated that Simmons had written a letter indicating that he was an eyewitness to the stabbing and that he would be willing to testify against Gibson and Ketchem in exchange for favorable treatment in his own proceeding for modification of his sentence in another court. At a pretrial hearing on October 31, 2005, counsel for co-defendants Gibson and Ketchem confirmed that he had received a copy of the letter approximately two weeks earlier. However, defense counsel did not attempt to depose Simmons until November 4, 2005, and Simmons refused to cooperate at that time.
Defense counsel deposed Investigator Mike Rains, who had been at the scene of the attack, on November 4, 2005. At that time, Rains provided counsel for both sides with a sixty-seven-page report he had prepared following the attack. As it turns out, only twenty-one pages of the report had been previously provided, while the rest had been inadvertently retained by the Indiana State Police. In the full report, Rains indicated that inmate Simmons was an eyewitness to the attack and that inmates Munson and Deckor had given statements concerning what they overheard when in holding cells near Gibson and Ketchem. On the first day of trial, defense counsel filed a motion to exclude Simmons' testimony, arguing that both parties had originally determined his testimony to be self-serving and of little value and noting that Simmons refused to be deposed on November 4, 2005. The motion also sought to exclude any testimony by Munson or Deckor and any testimony or evidence relating to their testimony, arguing that because the Indiana State Police had failed to turn the report over to the parties before Rains' deposition, the report should be considered as evidence withheld by the State. The trial court denied the motion to exclude on all grounds but did provide defense counsel with the opportunity to depose the witnesses before they testified, which defense counsel did.
On November 10, 2005, the jury returned a verdict finding Ketchem guilty on all counts.[4] At sentencing, the trial court merged Count I into Count II and sentenced Ketchem to forty-five years on Count II and twelve years on Count III, to run consecutively, for an aggregate sentence of fifty-seven years. Ketchem now appeals his convictions and sentences.

Discussion and Decision
Ketchem raises four issues on appeal, which we rephrase and reorder as follows. He first contends that the trial court abused its discretion when it denied his motion to exclude evidence relating to the testimony of inmates Simmons, Munson, and Deckor. Second, he contends that his convictions for attempted murder and for prisoner possessing a dangerous device or material are in violation of the principles of double jeopardy and so should have been merged by the trial court. Third, he argues that the trial court considered improper aggravating circumstances in light of Blakely v. Washington. Last, he alleges that the trial court abused its discretion when it ordered his sentences to run consecutively.[5] We address each of these issues in turn.

I. Motion to Exclude Evidence
Generally, the admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. Carpenter v. State, 786 N.E.2d 696, 702 (Ind. 2003). We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. Id. at 702-03. Ketchem argues that the trial court abused its discretion with regard to two different evidentiary rulings: (1) the admission of inmate Simmons' testimony and (2) the admission of testimony by and pertaining to inmates Munson and Deckor.

A. Simmons' Testimony
Ketchem contends that the trial court should have excluded Simmons' testimony because neither party realized the import of that testimony until the full text of Officer Rains' report was provided. In support of this argument, Ketchem emphasizes that both parties initially attributed little weight to Simmons' offer to testify because the offer was couched in self-serving terms seeking lenience in Simmons' own legal proceedings. Ketchem also argues that exclusion was proper because Simmons refused to be deposed when his deposition was sought the Friday before the trial. The State counters first that Ketchem's motion to exclude evidence did not encompass Simmons' testimony and second that even if it had encompassed that testimony, Ketchem was aware that the State intended to present Simmons as a witness and therefore cannot complain that he was deprived of an adequate opportunity to interview and depose Simmons before trial. According to the State, then, the fact that Officer Rains' full report identified Simmons' as an eyewitness does not, in this case, discredit the trial court's determination. We agree with the State on all points.
First, the State is correct that Ketchem's motion to exclude evidence before the trial court did not cover Simmons' testimony. The motion requests only "that any and all evidence Not [sic] disclosed prior to Friday, November 4, 2005, be excluded from trial." Appellant's App. p. 64. At a pretrial hearing on October 31, 2005, Ketchem admitted that he had received a copy of Simmons' letter to the prosecution approximately two weeks earlier. The letter indicated that Simmons was an eyewitness to the attack on Sidener. The only portion of Officer Rains' full report cited by Ketchem as involving Simmons is Officer Rains' indication that Simmons witnessed the attack. As all evidence in the report concerning Simmons was apparently already disclosed to the defense upon its receipt of a copy of Simmons' letter in mid-October, the State is correct that the motion to exclude did not address Simmons' testimony.
Even assuming that the issue was properly before the trial court, however, Ketchem's argument fails. Although Ketchem repeatedly asserts that each party questioned the value of Simmons' testimony, he admits that he was aware that Simmons had offered his testimony as an eyewitness at least a couple of weeks before the pretrial discovery deadline of October 27, 2005. Furthermore, the State included Simmons' name on its Notice of Anticipated State's Witnesses, which it filed with the trial court on October 26, 2005, and that notice provided that Simmons "indicated that he is an eyewitness to the events alleged in the informations and specifically recounts all of the stabbings." Id. at 52. Having been fully aware of Simmons presence at the scene of the attack on Sidener and of the nature of the information he may have been able to provide, Ketchem cannot complain that he did not realize that he should consider this witness for deposition. Further, he cannot complain that Simmons refused to sit for his deposition on the three days before trial. First, it is undisputed that Ketchem had adequate notice of the witness and so adequate time in which to conduct a deposition or subpoena Simmons, if necessary. Second, the trial court permitted Ketchem to depose Simmons during the proceedings, and Simmons did not resist at that time.
Given all of the above considerations, we find that the exclusion of Simmons' testimony was not before the trial court because Ketchem's motion for exclusion of evidence encompassed only that evidence discovered by the parties after November 4, 2005. Moreover, even if the motion had included Simmons' testimony, admission of that evidence would have been appropriately within the discretion of the trial court.

B. Munson's and Deckor's Testimony and Related Evidence
Ketchem also contends that the trial court abused its discretion when it refused to exclude testimony by or about inmates Munson and Deckor regarding their conversations with Ketchem and Gibson after the attack. Ketchem contends that because this evidence was only discovered when the prosecution obtained the full version of Officer Rains' report on November 4, 2005, the evidence should have been excluded. The State argues that Ketchem has waived this issue because he failed to move for a continuance at trial when the trial court denied his motion to exclude. Alternatively, the State contends that the evidence was properly admitted because the prosecution provided it to the defense immediately after learning of the report. Again, we agree with the State.
Ketchem argues that the State, specifically the Indiana State Police rather than the prosecution, withheld the evidence contained in the portion of Officer Rains' report that was only submitted to the parties on November 4, 2005. He also contends that he was unable to properly prepare for trial because his counsel had prepared his defense on a theory of self-defense, and the information contained in Officer Rains' full report worked against that defense. According to Ketchem, then, the trial court abused its discretion when it denied his motion to exclude this evidence. However, when the trial court denied the motion, it did so at the same time it provided a remedy to the parties. The trial court held that while the evidence would not be excluded, Ketchem would be permitted to depose Munson and Deckor during the trial, before they were permitted to testify. Ketchem went on to depose the witnesses; notably, he did not seek a continuance at that time.
The Indiana Supreme Court held in Warren v. State, 725 N.E.2d 828, 832 (Ind. 2000), that a party's "[f]ailure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes waiver of any alleged error pertaining to noncompliance with the court's discovery order." (Emphasis added). Ketchem bemoans the fact that he did not believe the trial court would have granted a continuance because the judge had previously indicated to the parties that, because of scheduling issues at the courthouse, he wanted to keep the trial on track. We cannot accept this as a reason to permit counsel to now rescind a valid and strategically sound decision to forego any request for a continuance. Whether counsel believed a continuance might have been granted is irrelevant to the preservation of an argument for appeal. Counsel determined, apparently, that the remedy provided by the trial court was sufficient, and such a determination was a valid exercise of counsel's judgment. Upon choosing to forego a motion to continue, then, Ketchem waived any challenge on appeal.
Waiver notwithstanding, we further agree with the State that the trial court acted within its discretion when it denied Ketchem's motion to exclude. Evidence is, at times, inadvertently omitted from the discovery process. In such cases, the Warren court held that "[e]xclusion of evidence as a remedy for a discovery violation is only proper where there is a showing that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial." Id. at 832. Absent such deliberate or reprehensible conduct by the State, "there is no error when the State provides a defendant evidence as soon as the State is in possession of requested evidence." Id. (finding no error in trial court's denial of motion to exclude evidence where State received evidence four days before trial and promptly made the evidence available to defense counsel). Here, the State and Ketchem received this evidence at the same time on the Friday before trial. We find no deliberate or reprehensible conduct by the State. Therefore, we cannot say that the trial court abused its discretion when it denied Ketchem's motion to exclude the evidence pertaining to these two witnesses.

II. Double Jeopardy
Ketchem claims that his convictions for prisoner possession of a dangerous device and attempted murder violate the double jeopardy provisions of the Indiana Constitution. The Double Jeopardy clause is violated if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Guyton v. State, 771 N.E.2d 1141, 1142 (Ind. 2002) (citing Richardson v. State, 717 N.E.2d 32, 53 (Ind. 1999)). However, under the actual evidence test set forth in Richardson, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002).
In addition, the Indiana Supreme Court has acknowledged five situations that violate the Indiana Double Jeopardy clause: (1) conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished; (2) conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished; (3) conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished; (4) conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished; and (5) conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished. See Guyton, 771 N.E.2d at 1143 (citing Richardson, 717 N.E.2d at 57 (Sullivan, J., concurring)).
In Guyton, our Supreme Court addressed facts analogous to those of the case before us today. Guyton was convicted and separately sentenced on charges of murder, attempted murder, and carrying a handgun without a license. Evidence in the case indicated that Guyton was in possession of a handgun and that he pulled the gun out and fired upon a group of men. The Court was not persuaded by Guyton's argument that the handgun charge against him was factually included in his murder charge because he used the handgun to commit the murder, and therefore that his conviction and sentencing on both those counts constituted double jeopardy. Addressing each of the five circumstances that violate our double jeopardy clause, the Court found that the facts of Guyton's case fell short of meeting the requirements of any of those circumstances. Specifically, the Court held, "Carrying the gun along the street was one crime and using it was another." Id. (citing Mickens v. State, 742 N.E.2d 927, 931 (Ind. 2001) (upholding separate conviction on murder and possession of a handgun without a license where evidence showed that defendant was carrying a gun and then, upon approaching his victim, drew the gun and shot the victim).
The facts underlying Ketchem's offenses follow the same logic as those presented in Guyton and Mickens. Ketchem was in possession of a knife presumably during the walk to the prison's recreation pad and certainly several minutes before the attack when Simmons saw Ketchem with the knife. Ketchem later approached Sidener, began kicking him, then drew the knife and stabbed him. To borrow from the language of the Indiana Supreme Court, then, carrying the knife in the prison was one crime and using it was another. Pursuant to both Guyton and Mickens, we reject Ketchem's double jeopardy claim.

III. Aggravating Circumstances
Ketchem also challenges his sentence.[6] In general, sentencing lies within the discretion of the trial court. Henderson v. State, 769 N.E.2d 172, 179 (Ind. 2002). As such, we review sentencing decisions only for an abuse of discretion, "including a trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances." Id. "When enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances." Vazquez v. State, 839 N.E.2d 1229, 1232 (Ind. Ct. App. 2005) (quoting Bailey v. State, 763 N.E.2d 998, 1004 (Ind. 2002)), trans. denied. "A single aggravating factor may support the imposition of both an enhanced and consecutive sentence." Payton v. State, 818 N.E.2d 493, 496 (Ind. Ct. App. 2004), trans. denied.
Ketchem argues that the trial court violated the rule discussed in Blakely v. Washington that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. 296, 301 (2004) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)). The Indiana Supreme Court has held that, under Blakely:
a trial court . . . may enhance a sentence based only on those facts that are established in one of several ways: (1) as a fact of prior conviction; (2) by a jury beyond a reasonable doubt; (3) when admitted by a defendant; and (4) in the course of a guilty plea where the defendant has waived Apprendi rights and stipulated to certain facts or consented to judicial factfinding.
Trusley v. State, 829 N.E.2d 923, 925 (Ind. 2005) (formatting altered).
At Ketchem's sentencing, the trial court stated:
You began with acts of violence as a juvenile, then extreme violence directed against the correctional staff at a correctional facility, and then ultimately, the shanks and the attempted murder charge that the jury found you guilty of, and so the aggravators are that history of violence, escalating violence, and ultimately, the violence which led to your incarceration at the time of this incident. And I don't find any mitigating factors that are present here. So, clearly, aggravators outweigh mitigators and this should be an aggravated sentence.
Tr. p. 732. Further, in its written sentencing order, the trial court provided:
The Court finds aggravation: 1) defendant has a history of criminal or delinquent activity, including escalating violent criminal behavior; 2) defendant committed new offenses while incarcerated. The Court finds no mitigation.
Appellant's App. p. 18. Ketchem first seeks to convince us that "[i]n the transcript of the record there was no specific finding of criminal history as an aggravating circumstance." Appellant's Br. p. 25. He contends that the statements of the judge at sentencing implicated only factors that are derivative of his criminal history and therefore insufficient, on their own, to support aggravation. See Morgan v. State, 829 N.E.2d 12, 18 (Ind. 2005) (derivative observations go to the weight to be given to aggravating factors otherwise appropriately found by the trial court but cannot stand as aggravators separate from those appropriate factors). We decline to engage in this game of semantics.
It is clear both from the sentencing transcript and the written order that the trial court was referencing Ketchem's prior convictions, which include juvenile adjudications for battery and auto theft and adult felony convictions for conspiracy to commit battery and battery by means of a deadly weapon. To the extent that the trial court's statements were also derivative of Ketchem's prior convictions, this does not negate this clear reference to criminal history as the core aggravator.
Ketchem also argues that the second aggravator listed in the written order, that Ketchem committed an offense while incarcerated, fails the Blakely test because it was not found by a jury. On this point, we agree with the State's characterization of the aggravator. The State points out that Ketchem was found guilty of attempted murder and prisoner possession of a dangerous device. In order to be convicted of this latter charge, the jury had to find that Ketchem was incarcerated at a penal facility at the time of his crimes. See Ind. Code § 35-44-3-9.5. Therefore, the facts supporting this second aggravator, as found by a jury, indicate that Ketchem committed the offense of attempted murder while incarcerated at a penal facility.[7] The trial court acted within its discretion when it relied on each of the cited aggravators at sentencing.

IV. Consecutive Sentences
Ketchem last argues that it was improper for the trial court to order his sentences to run consecutively. As with decisions to enhance a defendant's sentence, the trial court considering consecutive sentencing must enter a statement that identifies significant aggravators and mitigators, states the reasons for their consideration, and demonstrates that the court balanced those factors to determine if the aggravators outweighed the mitigators. Diaz v. State, 839 N.E.2d 1277, 1279 (Ind. Ct. App. 2005); see Vazquez, 839 N.E.2d at 1232.
Ketchem does not allege that the trial court failed to meet the identifying and balancing factors set forth above. Rather, he argues that consecutive sentencing here is improper because the two offenses were the result of one continuing episode of criminal conduct. We take this to be an argument that because the crimes here arguably arise from one episode of criminal conduct, the sentences for the crime, if run consecutively, should not exceed the presumptive sentence for a felony one class of felony higher than the most serious conviction. See Ind. Code § 35-50-1-2(c) (2004). Even if we were to accept Ketchem's argument that both of his crimes were the result of one continuing criminal episode, this argument is ineffective because the statute specifically exempts crimes of violence, which include attempted murder, from this limitation. See id. We therefore affirm Ketchem's aggregate sentence of fifty-seven years.
Affirmed.
BAKER, J., and CRONE, J., concur.
NOTES
[1] Ind. Code § 35-42-2-1.5; Ind. Code § 35-41-5-1.
[2] Ind. Code § 35-42-1-1(2); I.C. § 35-41-5-1.
[3] Ind. Code § 35-44-3-9.5(1).
[4] Gibson was also convicted of all charges, and he appealed on similar grounds. We address his appeal in a companion case also issued today. See Gibson v. State, No. 48A02-0601-CR-00035 (Ind. Ct. App. Dec. 5, 2006).
[5] In his discussion regarding consecutive sentencing, Ketchem references Indiana Rule of Appellate Procedure 7(B), which covers inappropriate sentencing claims. See Appellant's Br. p. 23. However, Ketchem does not directly present nor in any way develop an argument regarding the appropriateness of his sentence in terms of the nature of his offenses or his character. We therefore regard his reference to Rule 7(B) as one merely misplaced in his discussion of other sentencing considerations, rather than a separate issue raised in this appeal. To the extent that Ketchem intended to raise an inappropriate sentencing claim, he has failed to present a cogent argument in support of his claim and has therefore waived the issue. See Ind. Appellate Rule 46(A)(8)(a).
[6] Between the date of Ketchem's offense, March 5, 2005, and the date of sentencing, December 6, 2005, Indiana Code §§ 35-50-2-4 & -5 were amended to provide for "advisory" sentences rather than "presumptive" sentences. See P.L. 71-2005, §§ 7-8 (eff. Apr. 25, 2005). This Court has previously held that the change from presumptive to advisory sentences should not be applied retroactively. See Walsman v. State, 855 N.E.2d 645, 650-51 (Ind. Ct. App. 2006), reh'g pending; Weaver v. State, 845 N.E.2d 1066 (Ind. Ct. App. 2006), trans. denied; but see Samaniego-Hernandez v. State, 839 N.E.2d 798, 805 (Ind. Ct. App. 2005). Therefore, we operate under the earlier "presumptive" sentencing scheme when addressing Ketchem's sentences.
[7] Having found that the trial court cited two properly considered aggravators, we need not address Ketchem's argument, as clarified in his reply brief, that the trial court erroneously relied on only one aggravator to both enhance his sentences and to run them consecutively where that aggravator was insufficient to support such an action.